UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD VENKAIYA, | No. 2:22-cv-2189-MCE-KJN |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 9, 13.) |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Disability Insurance Benefits under Title II.[1]  In his motion for summary judgment, plaintiff contends the Administrative Law Judge ("ALJ") erred in: (A) resolving plaintiff's visual limitations despite his severe diabetic retinopathy; (B) failing to explain why certain medical opinions were rejected; and (C) identifying past relevant work or jobs available in the national economy.  Plaintiff requests a remand for further proceedings.  (ECF Nos. 9, 14.)  The Commissioner filed a cross-motion for summary judgment and requests affirmance, arguing substantial evidence supports the ALJ's findings and the decision is free from legal error.  (ECF No. 13.)

////

---

[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(15) for the entry of findings and recommendations.  See Local Rule 304.

For the reasons stated below, the court RECOMMENDS plaintiff's motion be denied, the Commissioner's cross-motion be granted, and the case be affirmed.

I.  **RELEVANT LAW**

The Social Security Act provides for benefits for qualifying individuals unable to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a). An ALJ is to follow a five-step sequence when evaluating an applicant's eligibility, summarized as follows:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); see also 20 C.F.R. § 404.1520(a)(4). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).

A district court may reverse the agency's decision only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Id. at 1154. Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court reviews the record as a whole, including evidence that both supports and detracts from the ALJ's conclusion. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). However, the court may review only the reasons provided by the ALJ in the decision, and may not affirm on a ground upon which the ALJ did not rely. Id. "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Ford, 950 F.3d at 1154. Where evidence is susceptible to

2

more than one rational interpretation, the ALJ's conclusion "must be upheld." Id.  Further, the court may not reverse the ALJ's decision on account of harmless error. Id.

## II. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS

In January of 2019, plaintiff applied for Disability Insurance Benefits, alleging disability due to diabetes, hypertension, neuropathy, and second stage kidney disease. (See Administrative Transcript ("AT") 114 and 253-57, electronically filed at ECF No. 8.)  Plaintiff's application was twice denied, and he sought review with an ALJ. (AT 93, 106, 125.) The ALJ held two hearings on May 14, 2021, and October 1, 2021, where plaintiff testified about his symptoms, a medical professional testified about the medical record, and a Vocational Expert ("VE") testified regarding jobs plaintiff could do. (See AT 35-81.)

On October 12, 2021, the ALJ issued a decision denying plaintiff's claim. (AT 20-29.) At step one, the ALJ found plaintiff had not engaged in substantial gainful activity during the requested closed period of March 8, 2018 through August 31, 2020. (AT 23.) At step two, the ALJ noted plaintiff had the following severe impairments: diabetes mellitus, type 2, poorly controlled despite compliance; diabetic polyneuropathy; and diabetic retinopathy. (Id.) In so finding, the ALJ did not expound on this rationale other than to find plaintiff's hypertension, blood pressure, and obesity to be non-severe (findings plaintiff does not challenge here). (Id.)

At step three, the ALJ considered various listings related to plaintiff's diabetes, including (relevantly) Listings 1.00 (diabetic peripheral neurovascular disease with amputation); 2.00 (diabetic retinopathy); 6.00 (diabetic neuropathy); 11.00 (diabetic peripheral and sensory neuropathies, including hypoglycemia); and 12.00 (cognitive impairments, depression, and anxiety, including altered mental status and cognitive deficits). (AT 23-24.)   The ALJ found plaintiff did not meet any Listing, but stated his diabetes mellitus would be considered as part of his Residual Functional Capacity ("RFC").  The ALJ then determined plaintiff had the RFC to perform light work as under 20 C.F.R. § 404.1567(b) with the following additional limitations:

> [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently[;] can stand/walk for 6 hours in an 8-hour workday and does not have any sitting limitations[;] could frequently climb ramps and stairs and could occasionally climb ladders, ropes, or scaffolds and balance[;] has no limitations fingering and feeling[; and] should

avoid working at unprotected heights and near moving machinery.

(AT 24.)

In fashioning this RFC, the ALJ stated she considered plaintiff's symptoms, the medical evidence, and professional medical opinions in the record. (Id.) Relevant here, the ALJ summarized the medical evidence in the record demonstrating plaintiff had diabetes, complicated by neuropathy and retinopathy. This included eye exams from June of 2018, which the ALJ described as showing both "moderate NPDR" and "mild NPDR"; records from the spring of 2019 showing normal gait; improvements with his diabetes in February and May of 2020 due to diet and medication changes; normal gait, sensory and nerve functioning in the spring 2020; reports of no blurred vision in June of 2020; and general improvements with neuropathy, alertness, and mental health in August and November of 2020. (AT 25-26.) The ALJ noted plaintiff's testimony about the side effects he experienced from his medications, including extreme drowsiness. (Id.) The ALJ rejected the more extreme aspects of plaintiff's testimony because plaintiff's condition improved with changes to his regimen and diet; the ALJ otherwise stated the side effects were "considered when assessing the light work limitation with postural limitations and vibration limitation." (AT 26.) Finally, the ALJ noted medical evidence showing plaintiff at times had a wobbly tandem walk but otherwise normal gait, and stated the RFC accounted for his numbness, tingling, and pain from his diabetes, neuropathy, and retinopathy. (Id.)

The ALJ also took note of the medical opinions in the record. The ALJ found persuasive the opinions of Drs. Nguyen and Ordman (from the May 2019 and January 2020 PAMFs), as well as that of Dr. Tang (after an April 2019 exam), and adopted most of their expressed limitations into the RFC. (AT 26-27.) However, the ALJ did not adopt Dr. Tang's "frequent handling, fingering, and feeling" limitation. (AT 24, 27, 446.) Also, the ALJ did not adopt Dr. Ordman's opinion that plaintiff "would be slow and inefficient in any visual task," finding "no support for a limitation related to vision" because of the mild and non-proliferative diabetic neuropathy, plaintiff's denial of blurry or double vision, his ability to see with glasses, and his desire for a letter clearing him to drive so he could work as a driver. (AT 26.) The ALJ noted the testimony of neurologist Dr. Karpitsky, who testified at the second hearing and who "agreed with the

assessment of [Dr. Tang]" regarding plaintiff's neuropathy, noting plaintiff was "compliant with treatment." (See AT 63-78.) The ALJ found Dr. Karpitsky's opinion persuasive, citing his neurology specialty, understanding of Social Security, and support in the record for his opinion. (AT 24-25.) The ALJ found unpersuasive the January 2019 opinion of Dr. Ghods, who stated plaintiff's slowed concentration, lethargy and somnolescence due to medications would cause plaintiff to miss 3 days of work per month. The ALJ found this inconsistent with plaintiff's improvement after regimen and diet changes, and noted Dr. Karpitsky's disagreement with Dr. Ghods' opinion. However, the ALJ accepted Dr. Ghods' opinion that some drowsiness would result from plaintiff's medications. (AT 26-27.)

Based on the RFC and the VE's testimony, the ALJ concluded plaintiff was capable of performing his past relevant work as an "airport duty officer, DOT 375.133-010, light and SVP 6," as well as a "merchant patroller, DOT 372.667- 038, light but performed at medium, SVP 3." (AT 27-28.) In so assigning these two jobs, the ALJ reasoned:

> The [VE], in response to a question from the undersigned that accurately reflected the above residual functional capacity, compared the requirements of the above jobs to the claimant's restrictions and found that the claimant was capable of the sales representative financial services and customer service representative. The undersigned, after a review of the evidence and a comparison between the functioning of the claimant and the requirements of the position, concurs with the vocational expert and so finds that the claimant can perform this past relevant work. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform the airport duty officer as actually and generally performed and the merchant patroller as generally performed.

(AT 27-28.)[2] The ALJ also found there were multiple jobs in the national economy plaintiff could perform, including document preparer (sedentary and SVP 2, 25,000 jobs); order clerk (sedentary and SVP 2, 8,000 jobs); and charge account clerk (sedentary and SVP 2, 5,000 jobs). (AT 28.) Thus, the ALJ determined plaintiff was not disabled for the relevant period. (AT 29.)

The Appeals Council denied plaintiff's appeal. (AT 1-7.) Thereafter, plaintiff filed this

---

[2] The ALJ's references to "sales representative financial services" and "customer service representative" appear to be typographical, harmless errors. Molina, 674 F.3d at 1115.

5

action requesting review of the ALJ's decision, and the parties each moved for summary judgment. (ECF Nos. 1, 9, 13, 14.)

### III. DISCUSSION

In his motion for summary judgment, plaintiff contends the ALJ erred by: (A) failing to explain why any visual limitations were not adopted into the RFC despite a finding at step two that plaintiff had severe diabetic retinopathy and despite the evidence and medical opinions in the record; (B) failing to explain why limitations expressed by Drs. Karpitsy, Tang, and Ghods were not incorporated into the RFC where those opinions were deemed persuasive; and (C) resolving plaintiff's past relevant work and jobs available in the national economy. Plaintiff requests this court remand for further proceedings. (ECF Nos. 9, 14.)

The Commissioner requests affirmance, arguing substantial evidence supports the ALJ's decision to omit any visual restrictions and reject those portions of the physicians' opinions, as well as her determination at step four; and arguing no harmful legal error exists. (ECF No. 13.)

**Legal Standards – RFC**

The regulations define the residual functional capacity as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a). In determining plaintiff's RFC, the ALJ is to consider the objective medical evidence and other evidence. See Id. at sub. (b)-(d) (concerning the assessment of physical, mental, and other abilities); see also 20 C.F.R. § 404.1529 (governing how symptoms are to be evaluated). The ALJ is responsible for assessing the RFC at the hearing stage. 20 C.F.R. § 404.1546(c). An ALJ may synthesize and translate assessed limitations into an RFC assessment without repeating each functional limitation verbatim in the RFC assessment. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008).

**Legal Standards – Medical Opinions and Persuasiveness under the 2017 Regulations**

For applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or [PAMF], including those from [plaintiff's] medical sources." See 20 C.F.R. § 404.1520c(a). Instead, an ALJ is to evaluate medical opinions and PAMFs by considering their "persuasiveness." Id. In determining how "persuasive" the opinions of medical sources and PAMFs are, an ALJ must

6

consider the following factors: "supportability, consistency, treatment relationship, specialization, and "other factors." Id. at sub. (b) and (c)(1)-(5).

Despite a requirement to "consider" all factors, the ALJ's duty to articulate a rationale for each factor varies. Id. at sub. (a)-(b). The ALJ must explain how the supportability and consistency factors were considered, as they are "the most important factors." Id. at sub. (b)(2). Supportability is "the extent to which a medical source supports the medical opinion by explaining relevant objective medical evidence." Woods v. Kijakazi, 32 F.4th 785, 791-92 (9th Cir. 2022). Consistency is "the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Id. at 792. The regulations grant the ALJ flexibility to weigh the supportability and consistency factors based on all evidence in the record. 20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ is not required to articulate findings on the remaining factors (relationship with plaintiff, specialization, and "other") unless "two or more medical opinions or prior administrative medical findings about the same issue" are "not exactly the same," and both are "equally well-supported [and] consistent with the record." Id. at sub. (b)(2)-(3).

An ALJ may address multiple opinions from a single medical source in one analysis. 20 C.F.R. § 404.920c(b)(1) ("source-level articulation"). "[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003)).

**Legal Standards – Cherry Picking and Discussion of Evidence in the Record**

The Ninth Circuit has held that ALJ's may not cherry-pick around probative evidence. See Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing where the ALJ "selectively relied on some entries [in the plaintiff's treatment records] and ignored the many others that indicated continued, severe impairment."). This law appears still to be good law in this circuit, despite the revised regulations. However, this principle is often in balance with another: that an ALJ need not discuss all evidence presented to them. Howard, 341 F.3d at 1012. The court interprets this tension in the caselaw to indicate that where an ALJ provides "sufficient reasoning [allowing for] review," Lambert, 980 F.3d at 1277, including a discussion of most

7

evidence probative of the plaintiff's claim, Luther, 891 F.3d at 875, and this reasoning "may reasonably be discerned," Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012), the court's conclusion should be that the decision is upheld as "susceptible to more than one rational interpretation," Ford, 950 F.3d at 1154; see also Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) ("[A] reviewing court [is] not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion."). However, if the ALJ appears to be ignoring key segments of plaintiff's evidence regarding a particular condition, and it appears the ALJ does so to arrive at a predetermined outcome, the court will consider this to be inappropriate cherry-picking and order a reversal for further proceedings. Holohan, 246 F.3d at 1207.

### A. Visual Limitations

First, plaintiff contends the ALJ failed in her duty to articulate why she did not include any visual limitations in the RFC, arguing this is inconsistent with the finding at step two that plaintiff's diabetic retinopathy was "severe." The ALJ cited the following evidence in support of this decision: (i) a June 2018 eye examination revealing positive moderate NPDR without macular edema, 20/60 vision, and a "diagnosis of mild non proliferative diabetic retinopathy." (AT 470; 550); (ii) medical reports throughout 2020 where plaintiff reported improvement with his diabetes and no adverse side effects due to medication and lifestyle changes (AT 25-26); (iii) plaintiff's self-reports to medical professionals in June 2020 of controlled diet and denial of blurred or double vision, as well as his request for a letter stating he was clear to drive so he could return to work as a driver (AT 637); (iv) multiple "persuasive" medical opinions that did not include limitations in plaintiff's ability to work due to his visual limitations—save Dr. Ordman at the reconsideration phase, who did so opine (AT 26-27). The ALJ did not adopt Dr. Ordman's opinion that plaintiff "would be slow and inefficient in any visual task" (Exhibit 3A), finding "no support for a limitation related to vision" because of the same evidence above. (AT 26.)

Plaintiff contends the ALJ improperly rejected Dr. Ordman's expressed limitation by substituting her own lay opinion of the medical evidence. See, e.g., Nguyen v. Chater, 172 F.3d 31, 36 (1st Cir. 1999) ("As a lay person [the ALJ is] simply not qualified to interpret raw medical data in functional terms."). However, this is not the case here, as the decision demonstrates to the

8

undersigned that the ALJ was simply noting a difference in opinions between Dr. Ordman and the other medical professionals—none of whom opined plaintiff had these limitations. The ALJ was not required to defer to Dr. Ordman's opinion, and so long as the rational rejecting the opinion suffices under the relevant legal standards, the rationale is to be affirmed. 20 C.F.R. § 404.1520c (stating that the ALJ "will not defer . . . to any medical opinion(s) . . . ."); see Woods, 32 F.4th at 792.

On this, the decision rejects Dr. Ordman's "slow and inefficient in any visual task" opinion given plaintiff's denial of blurry and double vision, inference that plaintiff could see at night with his glasses, and note that plaintiff sought a return-to-work note near the end of the disability period. The undersigned concurs with plaintiff that this last fact does not appear to support the decision, as the Act "encourage(s) individuals who have previously suffered from a disability to return to substantial gainful employment when their medical condition improves sufficiently to allow them to do so." Flaten v. Sec'y of Health & Hum. Servs., 44 F.3d 1453, 1458 (9th Cir. 1995). However, the ALJ's findings that plaintiff denied blurry or double vision throughout the disability period, and inference that plaintiff's night vision was not poor when he wore his glasses, is factually supported by the record. While plaintiff points to other records where he did report poor vision on multiple occasions (see, e.g., AT 514, 507, 470, 650), the decision here (while not a model of clarity) indicates the ALJ was simply weighing competing evidence and resolving conflicts in the record. Ford, 950 F.3d at 1154; Molina, 674 F.3d at 1121 (requiring affirmance where the ALJ's reasoning "may reasonably be discerned").

Finally, as to plaintiff's broad contention that the ALJ erred in not assigning any visual limitations in the RFC despite a finding that his diabetic retinopathy was severe at step two, the undersigned again agrees this is an odd posture. 20 C.F.R. § 404.1522(a) (reminding that an impairment is severe only if it causes significant limitations on an individual's ability to perform basic work activities). However, this arguable error in misclassifying plaintiff's vision at step two is harmless, given that the ALJ ultimately resolved each of the medical opinions and conflicts in the record when formulating the RFC (as just described above). Treichler v. Comm'r, 775 F.3d 1090, 1099 (9th Cir. 2014) (describing an ALJ error as harmless if "the ALJ's path may

reasonably be discerned despite the error.").

**Inconsistencies in Persuasiveness Findings and the RFC**

In addition to the ALJ's discussion of plaintiff's eye impairment, he challenges the decision's resolution of certain other limitations expressed in the medical opinions.

First, plaintiff points to Dr. Karpitsky's testimony that plaintiff had been overmedicated for a time, and this regimen could have resulted in diminished concentration, slowed thought, lethargy, and an unsteady gait. (AT 72.) Plaintiff argues the ALJ erred because she adopted Dr. Karpitsky's opinion in full but failed to include any limitations based on this statement. (AT 24-25.) However, a review of the hearing transcript indicates Dr. Karpitsky was not testifying plaintiff in fact had these conditions, but rather that this regimen could result in such conditions. Given this, the ALJ did not err in omitting any such limitations based on Dr. Karpitsky's hearing testimony, but rather was required to look at other evidence in the record indicating whether plaintiff actually had those limitations. Here, this would be Dr. Ghods's assessment and opinion.

Dr. Ghods stated that plaintiff's medications during the relevant period would have made him drowsy, and so included a number of functional limitations including those hypothesized by Dr. Karpitsky. (AT 681-82.) The ALJ resolved Dr. Ghods's opinion as follows:

> While Dr. Ghods did not give any function-by-function limitations, his letter is persuasive that the medications would cause drowsiness. In March 2021, Dr. Ghods opined the claimant would have slowed concentration, and lethargy or somnolence. His medications would have side effects and he would miss 3 days of work per month (Exhibit 13F). This opinion is not persuasive and is inconsistent with the doctor's own treatment notes. At the hearing, Dr. Karpitsky noted that the Dr. Ghods notes did not indicate the claimant had any problems with concentration or any impairment that would cause him to miss 3 days of work per month. It is inconsistent with the claimant's improvement after medication changes and dietary changes (Exhibits 5F; 7F/22). He does not weigh in on any of exertional limitations and says unable to assess.

(AT 25-26.) Plaintiff argues that if the ALJ found Dr. Ghods's opinion persuasive on drowsiness, these limitations should have been included in the RFC. Also, given that plaintiff challenged the ALJ's rejection of Dr. Karpitsky's citation to "diminished concentration, slowed thought, lethargy, and an unsteady gait," and Dr. Ghods did so check these boxes (AT 681-82), the undersigned considers the ALJ's analysis on these issues here.

10

The court agrees that the ALJ's paragraph here (or the decision overall) is not a model of clarity. The decision often makes findings that some opinion is "persuasive," but then fails to fully resolve every aspect of that opinion. Regarding Dr. Ghods' opinion, the paragraph above appears at first glance to find his opinion both "persuasive" and "not persuasive." But a close parsing reveals that the ALJ only appears to adopt Dr. Ghods's finding that plaintiff would have been drowsy on his early prescription regimen. (AT 25 ("[Dr. Ghods's] letter is persuasive that the medications would cause drowsiness.").) The court reads the remainder of this paragraph as rejecting the remainder of Dr. Ghods' assessments because he left the function-by-function checkboxes blank and wrote "unable to assess," (AT 682), and because the boxes Dr. Ghods does check (diminished concentration/slowed thought, somnolescence or lethargy, interference with sustained tasks, need to lie down for more than an hour throughout the day, and miss 3+ unscheduled days a month) were inconsistent with his treatment notes, Dr. Karpitsky's opinion, and plaintiff's improvement with changes to his regimen and diet within the disability period. This is substantial evidence supporting the ALJ's rejection of Dr. Ghods' opinion, and the Ninth Circuit has reminded that reversals are not to be premised on poor drafting alone. Ford, 950 F.3d at 1154; Molina, 674 F.3d at 1121 ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.").

Additionally, plaintiff notes Dr. Tang assigned "frequent handling, fingering, and feeling" in his opinion, and the ALJ found this opinion "consistent with the record and supported." (AT 27, 446.) The ALJ also noted that Dr. Karpitsky adopted Dr. Tang's opinion in full, and the ALJ also found this opinion consistent with the record. (AT 27.) Given the manipulative limitations were rejected (see AT 24 (" . . .[Plaintiff] has no limitations fingering and feeling . . .")), plaintiff contends this was error requiring resolution by an ALJ. The court agrees, as the ALJ failed to explain this omission. The question is whether this error was harmless, given the jobs ALJ found plaintiff could do at step four (his past work) and five (other jobs in the national economy). Treichler, 775 F.3d at 1099 (describing harmless error where "the ALJ's path may reasonably be discerned"). It appears neither of the jobs the ALJ found plaintiff could do at step four require any manipulative limitations beyond what Dr. Tang assigned, and so would be harmless if the

11

ALJ committed no error at steps four. See "Airport Duty Officer, DOT 375.133-010, 1991 WL 673119 (occasional handling/fingering, no feeling required); "Merchant Patroller," DOT 372.667-038, 1991 WL 673101 (frequent handling, occasional fingering, no feeling required). Given that plaintiff challenges these of the ALJ's findings at step four, the court now turns to plaintiff's arguments about the ALJ's analysis in the final part of the decision.

### B. Steps Four and Five

**Legal Standards – Past Relevant Work**

Under the Social Security Act, an individual will be deemed to be under a disability if the impairments preclude both previous work and "any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). At step four, the ALJ considers whether a plaintiff can perform past relevant work, either as actually or generally performed, given the formulated RFC. 20 C.F.R. § 404.1520(f). If so, plaintiff will be found not disabled. Id. The ALJ may rely on VE testimony "about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b). The burden remains with plaintiff at step four. Ford, 950 F.3d at 1148.

**Legal Standards – Available Jobs in the National Economy**

In contrast with step four, the Commissioner bears the burden at step five. Ford, 950 F.3d at 1148. Under step five, the ALJ is to compare the RFC to consider potential occupations the claimant may be able to perform. Zavalin v Colvin, 778 F.3d 842, 845 (9th Cir. 2015). For occupations, the ALJ may rely on the Dictionary of Occupational Titles—the SSA's "primary source of reliable job information" regarding jobs that exist in the national economy, as well as testimony from vocational experts—who can speak to specific occupations that a claimant can perform in light of the RFC. Id. at 845-46. "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." Id. at 846.

**Analysis**

To reiterate, the ALJ assigned a "light work" RFC with additional restrictions on lifting/carrying, standing/walking, climbing, and avoidance of heights and moving machinery. (AT 24.)  The ALJ presented this RFC to the VE, who stated plaintiff could perform past relevant work as an "airport duty officer, DOT 375.133-010, light and SVP 6," and a "merchant patroller, DOT 372.667- 038, light but performed at medium, SVP 3."  (AT 27-28.)  The ALJ accepted the VE's testimony, found plaintiff could do his past relevant work, and found him not disabled.  The ALJ's rationale on this finding is as follows:

> The [VE], in response to a question from the undersigned that accurately reflected the above residual functional capacity, compared the requirements of the above jobs to the claimant's restrictions and found that the claimant was capable of the sales representative financial services [sic] and customer service representative [sic]. The undersigned, after a review of the evidence and a comparison between the functioning of the claimant and the requirements of the position, concurs with the vocational expert and so finds that the claimant can perform this past relevant work. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant was able to perform the airport duty officer as actually and generally performed and the merchant patroller as generally performed.

(AT 27-28)  Plaintiff challenges the step four determination because he "never performed either of these alleged past relevant occupations."

As to the merchant patroller classification (DOT § 372.667-038), plaintiff admits this description conforms somewhat to his past job as a "lead security officer" for Kaiser Healthcare. (ECF No. 9 at 17.)  However, plaintiff contends the DOT entry is for a person working in the business industry, not the health care industry.  Plaintiff notes the ALJ's confusion at the hearing, given that "part of his job was to restrain patients who were being aggressive" (AT 44, 53), and this job duty is not a part of the merchant patroller DOT.  The undersigned disagrees.

First, this DOT entry explicitly notes an alternate title to the "Merchant Patroller" label is a "security guard," and explicitly classifies it within the "business services" industry.  See 1991 WL 673101.  See 1991 WL 673101 (DOT entry for "Merchant Patroller").  Plaintiff's argument elevates form over substance, as the VE reasonably classified plaintiff's past work for Kaiser job

under this DOT.  Second, the confusion plaintiff refers to at the hearing was resolved.  The VE determined that while plaintiff actually performed his job for Kaiser at the medium level (given that he had to occasionally restrain aggressive patients), the job was listed in the DOT as light and the VE testified (and the ALJ accepted) it was available as generally performed.  (See AT 52-53 (noting plaintiff performed the job at a medium level); AT 44 (plaintiff's testimony).)  Given this, the undersigned finds no error at step four.[3]  Third, given that this position does not require anything more than frequent fingering, the ALJ's failure to include Dr. Tang's manipulative limitations in the RFC was harmless error, as discussed in Section B above.

///

///

///

---

[3] Should the district judge disagree with the undersigned's conclusions on the Merchant Patroller position, or find additional error in the ALJ's analysis, the undersigned notes significant reservations with the ALJ's analysis on the other past relevant work and step five findings. Regarding the "airport duty officer" classification, plaintiff argues that DOT 375.133-010 is actually called a "police sergeant, precinct I."  See 1991 WL 673119 (DOT entry for "Police Sergeant, Precinct I).  Plaintiff notes this job describes a person who "supervises coordinates activities of a squad of police officers," among other things.  In contrast, plaintiff's job at the airport was to operate an x-ray machine screening DJL cargo, and did not require him to supervise anyone.  (AT 40-41; 329.)  The Commissioner argues this is again a distinction without a difference, as the DOT explicitly states the job "may be designated . . . according to type of facility assigned as "Airport Safety And Security Duty Officer."  However, as plaintiff notes, this alternative classification may still require duties more akin to a police sergeant than an x-ray tech.  The undersigned would not affirm on this past relevant work, but given the above, this error is harmless.  Treichler, 775 F.3d at 1099.

As to the ALJ's step five analysis, the undersigned has reservations as well.  The ALJ noted there were jobs in the national economy plaintiff could perform, including document preparer (sedentary and SVP 2, 25,000 jobs); order clerk (sedentary and SVP 2, 8,000 jobs); and charge account clerk (sedentary and SVP 2, 5,000 jobs).  (AT 28.)  However, as plaintiff notes, the "document preparer" job description appears woefully out of date and so should not constitute substantial evidence.  See, e.g., Browning v. Colvin, 766 F.3d 702 ("A further problem is that the job descriptions used by the Social Security Administration come from a 23–year–old edition of the Dictionary of Occupational Titles, which is no longer published, and mainly moreover from information from 1977–37 years ago. No doubt many of the jobs have changed and some have disappeared.").  The remaining jobs doubtfully constitute "significant numbers" in the national economy.  Cf., e.g., Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012) (noting that 1,680 national jobs was not significant, requiring remand); with, e.g., Gutierrez v. Comm'r, 740 F.3d 519, 528 (9th Cir. 2014) (noting the statutory standard was met where the ALJ determined 25,000 jobs in the national economy was significant).  Treichler, 775 F.3d at 1099.

## IV. **CONCLUSION**

Beyond plaintiff's challenges, the court finds the ALJ's decision otherwise supported by substantial evidence in the record and free from legal error. Ford, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence.")  Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 9) be DENIED;
2. The Commissioner's cross-motion (ECF No. 13) be GRANTED;
3. The final decision of the Commissioner be AFFIRMED; and
4. The Clerk of Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: October 17, 2023

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

venk.2189

15